STATE, LEHIGH VALLEY RAILROAD COMPANY ET AL.,
    PROSECUTOR, v. DOVER AND ROCKAWAY RAILROAD
    COMPANY.

SAME v. SAME.

1. An action in proceedings to condemn lands finding errors therein,
   which are objected to and not waived by the land-owner, may discon-
   tinue, and proceed anew to acquire such lands; a futile effort to secure
   condemnation does not exhaust the power to take effective measures to
   that end.

2. The Morris canal, although declared to be a public highway, is not,
   within the meaning of the fourteenth section of the general railroad
   law, a street or highway which must be crossed by a railroad above or

below grade. The streets and highways therein mentioned are the public thoroughfares in cities.

3. Merely crossing a railroad or canal with another railroad, as it involves no exclusive use of the property occupied in crossing, is not a taking or impairment of the company's franchises whose property is thus burdened.

4. When the parties appear before the judge at the time and place designated for the appointment of commissioners, and are fully heard thereon, the judge, deeming it necessary, may take time for his decision, and an order of appointment subsequently made and signed by him, is not thereby invalidated.

5. Commissioners, in assessing lands taken *in invitum*, may acquire information affecting their action from others, and they may receive it in their discretion, under oath.

6. It is not illegal for commissioners to agree with the company, whose duty it is to pay for their services, upon a just and equitable compention. The land-owner has ground of complaint only when the amount agreed upon is exorbitant or so large as to create suspicion of corruption.

7. Application to the judge to fix the compensation recommended.

8. Where the proceedings to condemn are had under an act giving a right of appeal upon the merits, and such appeal has been taken, the court will not set aside the award appealed from unless there has been a plain departure from the law in a matter prejudicial to the parties.

---

On *certiorari* to remove order of appointment of commissioners.

Argued at June Term, 1881, before Justices DEPUE and KNAPP.

For the prosecutor, *Thos. N. McCarter*.

For the defendant, *Henry C. Pitney*.

The opinion of the court was delivered by

KNAPP, J. Two writs of *certiorari* issued out of this court, one to remove the proceedings before a Supreme Court justice, appointing commissioners to assess compensation for a right to cross the canal of the prosecutor at Dover, with the railroad of the defendant; and the other to bring up the

report of the commissioners awarding compensation. The cases were heard and may be disposed of together, and in the order in which the several questions raised were presented on argument.

The first reason relied on for reversal is, that when the appointment was made there was another order in force, made by the same judge, appointing the same commissioners to condemn substantially the same property, and under proceedings had by defendant. It is objected that there was no power to make a second order to appraise rights and property pending a former order which embraced them.

The facts giving rise to the objection are that prior to making the order now before us, the defendant, on application to the judge, had procured an appointment of commissioners, against an objection urged by the prosecutor that the petition was too vague and indefinite in describing the subject of condemnation to warrant the judge in proceeding to an appointment. The order was made notwithstanding this, and perhaps other objections, and thereupon a *certiorari* was allowed, removing those proceedings into this court. Thereafter, the defendant, yielding to the force of the prosecutor's objection, determined to discontinue or abandon the proceedings, and to institute anew those now before us as a mode of amending the defects in the former.

The defendant concedes the irregularity of two proceedings of this character being on foot at the same time, to accomplish the same purpose. And it is, I think, quite clear that the question is not now before us at what stage in condemnation proceedings a private corporation loses its right, against the will of the land-owner, to withdraw from its purpose to take his lands. For no such withdrawal is proposed or contemplated. The present procedure is to secure more effectually the taking of the property.

The point here is, whether a condemning party, finding errors in its proceedings, which are objected to and not waived by the land-owner, may yield to the objection and stop.

I can discover no good reason why he may not do so. Cer-

tainly no rule of law is suggested which forbids it. A defeat of the proceeding is the object aimed at in the objection, and complaint by the objector that the end sought has been attained, seems to savor of inconsistency. Having discontinued, the defendant was not thereby precluded from the right to take, by proper methods, the property or rights which it might lawfully acquire in constructing its road. Under the right to take lands *in invitum*, a futile effort to secure condemnation, does not exhaust the company's power to take effective measures to that end.

This reason is not ground for reversal.

The next objection is, that the defendant had no authority in law to take, use and occupy the lands of prosecutors in the manner proposed in the application. The proposed crossing is by a lift-bridge spanning the canal-lock, and resting upon stone abutments outside of, and level with the lock walls. Prosecutors insist that crossing thus at the grade of the canal banks is illegal. First, because of the provisions of an act of March 14th, 1879, entitled "An act in relation to bridges over the Morris canal." But it plainly appears that this act refers only to those bridges which the canal company is required to build at public highway and farm crossings, and not to crossings by railroads.

But, second, it is claimed that the fourteenth section of the general railroad act prohibits such crossing. It is there enacted that when "any railroad shall cross the streets or highways in any city, it shall be either above or below the grade thereof, at such distance as shall not interfere with the free and uninterrupted use of such street or highway." As Dover is a city, and as the canal charter declares that the canal shall be a public highway, it is claimed to be such within the meaning of this section, and must, as a highway, be crossed above or below grade. It would seem too clear for doubt, that canals and railroads, although declared to be public highways in their appropriate use, are not the streets and highways intended in the section referred to. The provision relates to those public streets, avenues and thoroughfares in cities which

are devoted to ordinary passage and travel, and over which the local authorities have supervision and control in the public interest. For it is further enacted in the same section that the right to cross at grade may, in the interests of the city, be permitted by license from the common council.

The further objection is urged that the right sought to be acquired destroys or seriously impairs the corporate franchises of the prosecutors.

Taking the exclusive use of a part of corporate property necessary to the exercise of its authorized powers, is, in effect, a destruction or diminution of the franchises of the corporation. *N. J. Southern R. R. Co.* v. *Long Branch Com'rs*, 10 *Vroom* 28.

The provisions of the thirty-sixth section of the general railroad law affords protection to such rights against all invasion or interference, except in such small degree as may result from the mere right to cross the lands or located route of corporations chartered for purposes of transportation. The right to cross merely, which is that taken in this case, involves no exclusive use of the property. It is a right of way only, "and the place of crossing remains in the common use of the parties for the exercise of their several franchises. The condemnation of such a right leaves the franchises unimpaired." *N. J. Southern R. R. Co.* v. *Long Branch Com'rs, supra.*

The facts do not sustain this reason. The right to cross is clear, and the manner of effecting it is not unnecessarily or unreasonably inconvenient to the canal company.

The last objection to the preliminary proceedings relates to the manner in which the order of appointment was made. The reason avers that it was not made at the time and place appointed, as required by the twelfth section of the law. The section directs that the justice, on application made as prescribed, shall assign a particular time and place for the appointment of commissioners, at which time * * he shall appoint, under his hand and seal, three * * commissioners, &c. The justice had designated October 15th, at the court-house in Morristown, as the time and place to appoint

commissioners. It appears upon the face of the order that such designation was made, the requisite notice of the meeting given, and that at the time and place the parties appeared and were heard upon the matter before the judge, and he having taken time to consider the matter, and no good cause appearing to the contrary, he did appoint, &c. The order bears date on the 5th day of November, 1880. No formal continuance of the matter to any other day certain, was ordered by the justice on the day of the meeting at Morristown.

Testimony, taken under a rule for that purpose, shows the controversy between the parties to have been over the authority and jurisdiction of the justice to make the appointment asked for; the prosecutors contending, among other reasons, that such power ended with the making of the previous order. Whether the commissioners were then named or chosen by the justice or agreed upon by the parties for appointment in the event of a decision to make the order, the testimony does not disclose. The silence in the proof on that subject, and the full evidence that the parties were at issue on other matters, taken in connection with the recitals in the order that the parties were heard on the matters before the justice, justifies the inference, if they do not force the conclusion that the selection of the persons to be appointed in case an order should be granted was not deferred, and that the time taken for consideration and advisement was upon the legal questions only. It was not averred in the argument that the commissioners were not decided upon at Morristown on the 15th of October. The argument, as well as the *reason* upon which it was based, was rather directed against the actual making of the order at a different time and place from that designated for the hearing.

The law, in terms, provides that at the time and place designated by the judge, he shall appoint commissioners, and the appointment is required to be under his hand and seal. But does it require that the order shall, under all circumstances, and as a condition of its validity, be actually signed on that day? The justice may be called upon to decide diffi-

cult questions of jurisdiction, in which time for reflection and investigation is indispensable; would it not be an unreasonably rigid interpretation of the provision to hold that, nevertheless, he must act at once, to preserve the proceedings from failure? The railroad law is general in its operation, forming the basis of an important class of public improvements, and is designed to secure practical results. Provisions to secure the substantial rights of the land-owner should be carefully guarded in the attainment of that end; yet extreme narrowness of interpretation, such as secures no real good to him, but creates inconvenience and embarrassment in its administration, is not to be sought for.

I think it was not the legislative purpose, in this provision, to exclude either the right to adjourn for further hearing of the parties, or to hold for advisement and future decision, matters on which the parties had been fully heard. The allowance and signing of the order upon decision had, would, I think, be entirely valid. If, as it is insisted, the words are susceptible only of an opposite meaning, as they serve no purpose in the protection of rights, they should be held to be directory merely.

The selection of commissioners is the principal act to be performed by the judge, and this should be done in presence of the parties. They should, at least, be there named and considered. Believing that the selection was so made in this case, and the mere signing the order deferred to a later day, I am not willing to reverse the proceedings for this objection. The prosecutors submitted their case upon the merits, to the commissioners, and had an award. From this, the law gives at their option, an appeal, if it be unsatisfactory. A clear departure from the law should appear before turning the parties back to begin anew.

That no notice was given of a time and place to decide the questions held by the justice, would seem to respect, alone, the convenience of the parties and his own. Hearing was ended, decision only remained. When it was had, both parties were duly notified of it.

Among the objections urged against the proceedings of the commissioners, the first is, that when they were met to value the injury done the prosecutors, they examined persons under oath, to obtain information, and refused to hear others because they were not sworn.

The commissioners are required by the act " to proceed to view and examine the land or material to be taken, and to make a just and equitable estimate or appraisement of the value of the same, and an assessment of the damage."

The case of *Van Winkle* v. *Camden and Amboy R. R. Co.*, 2 *Green* 162, is relied upon in support of this ground of reversal. One of the reasons, in that case, for setting aside the award and giving the plaintiff a trial before a jury, was that the commissioners had heard testimony of witnesses under oath, on matters tending to influence them in their judgment, and the Chief Justice there said that they were bound to judge of the value of the land and damages from their own view, and had no authority to examine witnesses under oath.

Doubtless, under that charter as under the general railroad law, no authority is found for summoning or swearing witnesses before them. The conduct which the learned Chief Justice charged upon the commissioners in that case as a fault, was in seeking information outside of that which a personal view would afford. This, united to other reasons, was considered good cause for awarding to the party an appeal upon the merits. Whether he would have considered that alone as such illegality in procedure as to justify sending the parties back to begin *de novo*, where correction could be had on appeal, may well be doubted. It is entirely certain that in all subsequent cases found in our reports, where such action of the commissioners has been alleged as error, the rule stated by the Chief Justice has failed of recognition. *Costar* v. *N. J. R. R. & T. Co.*, 3 *Zab.* 227; *S. C. on Error*, 4 *Zab.* 730; *Bridge Co.* v. *Giesse*, 6 *Vroom* 474; *S. C. on Error*, 6 *Vroom* 539.

In the case of Costar *v.* N. J. R. R. Co., Chief Justice Green says, " there are many facts of which the commissioners must be informed to enable them to act at all, and if such

information be given in accordance with the truth, it furnishes no ground of objection to their proceedings."

Mr. Justice Elmer says in the same case on error, that "it is impossible for commissioners to assess damages for the occupancy of lands, and for the removal, making and maintaining fences, without ascertaining from some source the facts upon which their judgment is to depend. If it should appear that they were purposely misled, it would be the duty of the court, perhaps, to set the whole proceeding aside. But the assessments of commissioners are subject to be reviewed in the present case at the option of the owner, and the verdict of a jury, taken after a regular trial and examination of witnesses, so that there is no necessity for holding the assessment absolutely void, and requiring the proceedings to be commenced anew, unless there has been a plain departure from the law." In Bridge Co. v. Geisse, in the Court of Errors, Mr. Justice Woodhull uses this language in speaking of the admission of extrinsic evidence by the commissioners: "There was not, in my judgment, any legal impediment to their receiving the same statements and documents, verified by affidavit, or by the testimony of witnesses sworn in their presence."

If, then, commissioners may, in addition to their own view, seek information from others to guide their judgment, it is not apparent how such information becomes objectionable by being given under form of an oath. Equally without legal force is the other side of this objection that the commissioners refused to hear third parties, except on oath. Hearing them or not was in their discretion. They refused to hear them except upon the condition that they were sworn, and they could have refused unconditionally.

The next ground for setting aside the report of commissioners, is that they were entertained with meat and drink when examining the premises and considering of their award. The defendant or some of its officers paid for their dinner at the hotel. This court refused to set aside the return of surveyors of the highways, upon an objection that they were so entertained by an applicant for the road, at their meeting to

lay it.    Mr. Justice Whitehead said that he saw no objection to a person at whose house they met, affording them reasonable entertainment.    *State* v. *Bergen*, 1 *Zab.* 342.

A like result followed similar objections in *State* v. *Justice*, 4 *Zab.* 413, and in *State* v. *Reckless*, 9 *Vroom* 396.    The practice is, to say the least of it, not in good taste, and one that commissioners might justly consider as offensive and exposing them to a suspicion of bias.    But under the cases cited it is not sufficient reason for a reversal of their award.

The final reason relied on is, that defendant unlawfully paid and the commissioners unlawfully received a large sum of money, under pretence that the same was for the fees and expenses of the commissioners, without having such fees and expenses taxed according to the statute by the justice who appointed them.    The prosecutors rely upon the authority of the case of *State* v. *White*, 6 *Vroom* 203, in which the return of surveyors of the highways laying a road, was set aside because the applicants paid the officers $5 each for a day's service; the fees by law being $1 per day only.    That decision is entitled to the fullest approval.    Here, however, no rate of compensation is prescribed by law, and the principle applied in that case could only disturb these proceedings upon a showing that the amount paid was so unusually large or so plainly in excess of an equitable and just remuneration for time and expenses as to indicate, or to excite a just suspicion of corruption.    There is no testimony showing what compensation is usually paid commissioners in service of this nature.    All we have in proof is the amount paid, viz., $25 to each for two days' services and expense of traveling about ten miles from their homes.

The commissioners and the officers of the company openly negotiated for the amount of the compensation to be paid, after their award had been made.    The president of the defendant corporation offered to pay them $10 a day each, and the expenses of each.    The commissioners demanded $25 each to cover both time and expenses; this was settled upon and paid.    There seems no just ground for the inference that the

sum paid was excessive, if it should be thought liberal. Nor have I any doubt that it was the right of the parties to agree upon the sum to be paid. The twelfth section of the railroad act authorizes the justice who appoints the commissioners, "upon the application of either party and on reasonable notice to the others, to tax and allow such costs, fees and expenses to the commissioners and others, as he shall think equitable and right, which shall be paid by the company." The parties who may apply are either the company charged with the payment, or the officers who are entitled to it. This provision is available when for any cause a taxation by the judge is desired by the parties. And for many reasons this mode of determining, by judicial allowance, the sum to be paid is highly commendable. Commissioners perform a delicate and responsible duty, and the confidence of those upon whose rights they must pass, as well as their own self-respect, will be better promoted by the avoidance of everything looking like service for an employer. The act does not, however, exclude the right, if parties so choose, to agree to a reasonable compensation for the services which have been performed. It is certain that the land-owner is not interested in the matter, and the objection does not avail him unless it bears an odor of corruption or fraud, or breeds suspicion of unfair dealing. Nothing like that appears.

Appeal was taken by the prosecutors from the award of the commissioners, by a petition filed in the Circuit Court of the county of Morris, on the 18th day of January, 1881, praying than an issue be directed, to the end that the value of the lands and the damages might be assessed by a jury. Whether an appeal does not *ipso facto* operate as a waiver of irregularities in the previous proceedings, or at least put the party to an election between the appeal and the writ of *certiorari*, as has been elsewhere held, (*Fitchburgh R. R. Co.* v. *B. & M. R. R. Co.*, 3 *Cush.* 58; *Del., Lack. and Western R. R. Co.* v. *Benson*, 61 *Penna. St.* 369; *Mills on Em. Dom.*, § 333,) was not discussed and will not be decided. Certain it is, that where the proceedings to condemn are had under an act which gives

a right to appeal with an opportunity of having the case re-heard on the merits, and an appeal has been taken, the court will not set aside the award appealed from unless there has been a plain departure from the law in a matter prejudicial to the rights of the parties. Such was evidently the view of Mr. Justice Elmer in Costar *v.* N. J. R. R. & T. Co., above cited.

The reasons present no ground for setting aside either proceeding, and they should be affirmed.